AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
## for the
### Southern District of California

In the Matter of the Search of )
*(Briefly describe the property to be searched or identify the person by name and address)* )
)  Case No. **2:23-mj-8608-LR**
Black Apple iPhone )
Model: Unknown )
With no identifying numbers or features )

**FILED**
Aug 10 2023
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY  s/ ClaudiaCarranza  DEPUTY

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-3, incorporated herein by reference.

located in the   Southern   District of   California  , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 USC 1324 | Transportation of Illegal Aliens |

The application is based on these facts:
See Attached Affidavit of Border Patrol Agent-Intelligence Miguel Flores incorporated herein by reference.

- ☐ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Border Patrol Agent-Intelligence Miguel Flores
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
   telephone    *(specify reliable electronic means)*.

Date:  08/10/2023

*Judge's signature*

City and state:  El Centro, California    HON. LUPE RODRIGUEZ JR., U.S. MAGISTRATE JUDGE
*Printed name and title*

## ATTACHMENT A-3
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-3:**     Black Apple iPhone
             Model: Unknown
             With no identifying numbers or features
             Seized from Gustavo Adolfo GARCIA-Quinonez
             **(Target Device #3)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization to search the mobile telephones described in Attachments A-1 to A-5 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of July 2, 2023, up to and including August 2, 2023, and is limited to the following:

a. tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b. tending to identify other facilities, storage devices, or services such as email addresses, IP addresses, and/or phone numbers that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d. tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e. tending to identify the user of, or persons with control over or access to, the Target Device;

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.

# AFFIDAVIT

I, Miguel Flores, United States Border Patrol Agent, having been duly sworn, depose and state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for warrant(s) to search the following electronic device(s):

**A-1:** Red Apple iPhone
Model: Unknown
With no identifying numbers or features
Seized from Gustavo Adolfo GARCIA-Quinonez
**(Target Device #1)**

**A-2:** Black Apple iPhone
Model: Unknown
With no identifying numbers or features
Seized from Gustavo Adolfo GARCIA-Quinonez
**(Target Device #2)**

**A-3:** Black Apple iPhone
Model: Unknown
With no identifying numbers or features
Seized from Gustavo Adolfo GARCIA-Quinonez
**(Target Device #3)**

**A-4:** Navy Blue Motorola
Model: N57C9
IMEI: Unknown
Seized from Jose SANCHEZ-Contreras
**(Target Device #4)**

**A-5:** Doppio Cellphone
Model: Unknown
With no identifying numbers or features
Seized Julio Cesar BERNAL-Villegas
**(Target Device #5) (collectively "Target Devices")**

as further described in Attachments A-1 to A-5, and to seize evidence of a crime, specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as further described in Attachment B.

2. The requested warrant relates to the investigation and prosecution of Gustavo Adolfo GARCIA-Quinonez (GARCIA) for transportation of illegal aliens Jose SANCHEZ-Contreras (SANCHEZ), and Julio Cesar BERNAL-Villegas (BERNAL) (collectively, the "Material Witnesses") in violation of Title 8 U.S.C. § 1324 within the Southern District of California. The Target Devices were seized from GARCIA and the Material Witnesses on or about August 1, 2023, incident to the arrest of GARCIA and the Material Witnesses. The Target Devices are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

3. Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth every fact that I, or others, have learned during the course of this investigation. The information contained in this Affidavit is based upon my personal observations and knowledge, my review of various official reports, and upon conversations with other Border Patrol Agents. Dates and times are approximate.

### EXPERIENCE AND TRAINING

4. I am a United States Border Patrol Agent with the Department of Homeland Security, Customs and Border Protection, United States Border Patrol ("USBP"). I have been employed as a full-time, sworn federal BPA with the USBP since December 4, 2006, and graduated from the USBP Basic Border Patrol Training Academy located in Artesia, New Mexico. The 20-week Academy curriculum covers specialized training in the Immigration and Naturalization Act, criminal law, and statutory authority, as well as cross-training in Title 21, United States Code, Controlled Substances law, and in Title 19, United States Code, Customs law.

5. I am currently assigned to the El Centro Sector Prosecutions Unit. The El Centro Sector Prosecutions Unit is tasked with the responsibility of investigating and prosecuting alien smuggling organizations that utilize the Southern and Central Districts of California as an operational corridor. In the course of my duties as a Border Patrol Agent, I investigate and prepare cases for prosecution against persons involved in the inducement of the illegal entry of undocumented aliens into the United States; the smuggling of undocumented aliens into the United States; and the transportation and harboring of undocumented aliens within the United States.

6. Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern District of California. I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal activities. Because they are mobile, the use of cellular telephones permits alien smugglers and transporters to easily carry out various tasks related to their smuggling activities, including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

7. The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens. For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the

3

illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors. Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to make smuggling arrangements, receive instructions, and report their locations after crossing.

8. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

9. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

    a.    tending to indicate efforts to smuggle aliens from Mexico into the United States;

    b.    tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

    c.    tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

    d.    tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

    e.    tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

    f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

10. On August 1, 2023, Remote Video Surveillance Systems (RVSS) operators were conducting surveillance of the border area approximately 18 miles east of the Calexico, California West Port of Entry. This area of the border region consists mainly of spotted brush and open desert. In this area, the International Boundary Fence (IBF) is approximately 20 feet tall. The All-American Canal (AAC) is a large canal that runs parallel to the IBF. The AAC is approximately three quarters of a mile north of the IBF, and the nearest major roadway, Highway 98, is approximately one mile north of the IBF.

11. At approximately 1:20 p.m., Border Patrol Agent (BPA) A. Pena, who was in the RVSS room at the Calexico Border Patrol Station, observed two suspected illegal aliens walking north from the IBF. BPA Pena observed the suspected illegal aliens reach the AAC and enter it. At approximately 5:00 p.m., BPA J. Bourque was parked near Highway 98 in an unmarked Service vehicle and observed a black sedan, later identified as a 2014 Ford Taurus, driving eastbound on Highway 98. Approximately two minutes later, BPA Bourque observed the two suspected illegal aliens emerge from the brush on the south side of Highway 98 and run northbound across the roadway where, approximately ten seconds later, the Ford stopped on the shoulder of Highway 98 next to the suspected illegal aliens and they boarded the vehicle.

12. BPA A. Mills and BPA D. Davalos arrived on scene in their fully equipped service vehicles and attempted to conduct a traffic stop, but the Ford failed to yield. After

5

pursuing the vehicle for approximately one and a quarter mile, a Vehicular Immobilization Device was deployed in the roadway resulting in rapid deflation of tires. The driver continued to flee for another quarter mile when the Ford came to a stop and the two suspected illegal aliens bailed out of the passenger side of the vehicle. Thereafter, the Ford continued to drive for another half mile until it came to a stop. BPAs Mills, Davalos, and Pena approached the Ford and identified themselves as a United States Border Patrol Agents to the driver, later identified as GARCIA. BPA Pena ordered GARCIA to exit the vehicle and BPA Davalos conducted a field immigration interview with GARCIA. Agent Davalos determined that GARCIA is a Guatemalan Citizen illegally present in the United States.

13. BPA R. Alfaro, who was in the area where the two suspected illegal aliens exited the Ford, detained the two suspected illegal aliens, and conducted a field immigration interview. BPA Alfaro determined that these individuals, later identified as Jose SANCHEZ-Contreras, and Julio Cesar BERNAL-Villegas, were citizens of Mexico illegally present in the United States. GARCIA, SANCHEZ, and BERNAL were all placed under arrest and transported to the Calexico Border Patrol Station for processing.

14. At the Border Patrol Station, GARCIA was advised of his Miranda rights to which he stated he understood and was willing to answer questions without the presence of an attorney. GARCIA stated that he is a citizen of Guatemala illegally present in the United States and that he currently lives in San Bernadino, California. GARCIA stated that he posted a message on his Facebook page stating he was looking for work and to contact him if anyone had work. GARCIA stated that an unknown person contacted him and offered him a job to transport family and that he would be paid $700.00 for this job.

15. Material Witness Julio Cesar BERNAL-Villegas stated he is a citizen of Mexico and does not possess any immigration documents that would allow him to work or reside in the United States legally. BERNAL stated he made arrangements for himself to be smuggled into the United States illegally for $3,000.00.

16. Material Witness Jose SANCHEZ-Contreras stated he is a citizen of Mexico and does not possess any immigration documents that would allow him to work or reside in the United States legally. SANCHEZ stated his friend made the arrangements for him to be smuggled to the United States illegally for $9,500.00.

17. During an inventory search of the Ford, BPA Alejandro Pena observed two cellphones, a red iPhone (Target Device #1) and a black iPhone (Target Device #2) on the driver's seat. BPA Pena also observed another cellphone, a Black iPhone (Target Device #3) in the driver's side door pocket. Garcia claimed ownership of all three iPhones. During a search incident to arrest of the two Material Witnesses, BPA Raphael Alfaro found that both were carrying a cellphone in their pants pockets: a navy blue Motorola (Target Device #4) belonging to SANCHEZ and a Doppio Cellphone (Target Device #5) belonging to BERNAL. These cellphones were also seized as evidence.

18. I am aware that smuggling conspiracies require planning to successfully evade detection by law enforcement. In my professional training and experience, this may require planning and coordination in the days and weeks prior to the event. Additionally, co-conspirators are often unaware of the subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine their whereabouts. Given this, I respectfully request permission to search the Target Devices for data beginning on July 2, 2023, up to and including August 2, 2023, the day after the arrest of GARCIA and the Material Witnesses.

**METHODOLOGY**

19. It is not possible to determine merely by knowing the cellular telephone's make, model and serial number, the nature, and types of services to which the device is subscribed, and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants, and have functions such as calendars and full address books, and can be mini computers allowing for electronic mail services, web services, and rudimentary word processing. An increasing number of cellular service providers now

allow for their subscribers to access their device over the internet and remotely destroy all the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode," which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and, instead, store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

20. Following the issuance of this warrant, a case agent familiar with the investigation will collect the Target Devices and subject them to analysis. All forensic analysis of the data contained within the telephones, and their memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

21. Based on the foregoing, identifying, and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this Court.

//
//
//
//
//

## CONCLUSION

22. Based on all the facts and circumstances described above, I believe that probable cause exists to conclude that GARCIA and the Material Witnesses used the Target Devices to facilitate the offense of alien smuggling. The Target Devices likely were used to facilitate the offense by transmitting and storing data, specifically that described in Attachment B, which constitutes evidence of violations of Title 8, United States Code, Section 1324. I also believe that probable cause exists to believe that evidence of illegal activity committed by, the Material Witnesses, and others continues to exist on the Target Devices. Therefore, I respectfully request that the Court issue this warrant.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
Miguel Flores
Border Patrol Agent-Intelligence
United States Border Patrol

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 10th day of August, 2023.

_____  2:14 p.m.
HON. LUPE RODRIGUEZ, JR.
UNITED STATES MAGISTRATE JUDGE

9

## ATTACHMENT A-1
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-1:**   Red Apple iPhone
Model: Unknown
With no identifying numbers or features
Seized from Gustavo Adolfo GARCIA-Quinonez
**(Target Device #1)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-2
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-2:**        Black Apple iPhone
               Model: Unknown
               With no identifying numbers or features
               Seized from Gustavo Adolfo GARCIA-Quinonez
               **(Target Device #2)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-3
PROPERTY TO BE SEARCHED

The following property is to be searched:

| | |
|---|---|
| **A-3:** | Black Apple iPhone<br>Model: Unknown<br>With no identifying numbers or features<br>Seized from Gustavo Adolfo GARCIA-Quinonez<br>**(Target Device #3)** |



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-4
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-4:** Navy Blue Motorola
Model: N57C9
IMEI: Unknown
Seized from Jose SANCHEZ-Contreras
**(Target Device #4)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

# ATTACHMENT A-5
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-5:**    Doppio Cellphone
Model: Unknown
With no identifying numbers or features
Seized Julio Cesar BERNAL-Villegas
**(Target Device #5)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

# ATTACHMENT B

## ITEMS TO BE SEIZED

Authorization to search the mobile telephones described in Attachments A-1 to A-5 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of July 2, 2023, up to and including August 2, 2023, and is limited to the following:

a. tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b. tending to identify other facilities, storage devices, or services such as email addresses, IP addresses, and/or phone numbers that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d. tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e. tending to identify the user of, or persons with control over or access to, the Target Device;

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.